UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| SHAWN SCHROLL, DENNIS SCHROLL, and LORI SCHROLL, <br>                     Plaintiffs, <br> v. <br><br> BOARD OF EDUCATION CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT #4, CHAMPAIGN COMMUNITY UNIT SCHOOL DISTRICT NO. 4, ILLINOIS STATE BOARD OF EDUCATION, and DR. ROBERT LADENSON, <br><br>                     Defendants. | Case No. 06-2200 |

# ORDER

In October 2006, Plaintiffs Shawn Schroll and his parents, Lori Schroll and Dennis Schroll, filed a Complaint (#1) against Defendants, Board of Education of Champaign Community Unit School District No. 4, Champaign Community Unit School District No. 4 (hereinafter "District"), Illinois State Board of Education, and Dr. Robert Ladenson, pursuant to the Individuals with Disabilities Education Act (hereinafter "IDEA") (20 U.S.C. § 1401, *et seq.*). Plaintiffs seek review of the July 17, 2006, decision of Illinois State Board of Education due process hearing officer Robert Ladenson.

In May 2007, Plaintiffs filed a Motion for Summary Judgment (#21) and the District filed a Motion for Summary Judgment (#23). After reviewing the parties' pleadings, memoranda, and other materials, this Court **DENIES** Plaintiffs' Motion for Summary Judgment **(#21)**.

## I. Background
### A. Undisputed Facts

The parties stipulated to the following undisputed facts: Schroll is an eighteen-year-old high-school student who was diagnosed with Attention Deficit Hyperactivity Disorder (hereinafter "ADHD") and dyslexia and has received special education since enrolling in the

District as a fifth grader.  (Transcript, #11-13, p. 8; Record, #11-4, pp. 158, 160, 163.)  Schroll has completed three years of high school with passing grades and is on track to graduate after completing his fourth year.  (#11-11, p. 23.)

Schroll has difficulty in reading, writing, spelling, and math, and has an IQ score of 82, which places him in the low-average range.  (#11-5, pp. 222, 242.)  Consistent with his individualized education program (hereinafter "IEP") goals of accommodating or improving reading decoding, accommodating or improving written expression, accommodating or improving math calculation, accommodating or improving math reasoning skills, and accommodating or improving a reading deficit, Schroll receives classroom accommodations including orally administered exams, extended time for exams, use of a calculator or other calculation device, retests for unsatisfactory scores, and extra credit opportunities.  (#11-4, pp. 166-73.)

In November 2005, Schroll stopped attending Central High School after an incident in which he was briefly abducted at gunpoint.  (#11-5, pp. 221, 266; #11-9, p. 212.)  During the two weeks following the incident, Schroll was hospitalized in a psychiatric facility.  One of the facility's tutors told Schroll and his parents about the Dyslexic Institute of America (hereinafter "DIA").  (#11-11, pp. 18-19.)  Also in November 2005, the DIA evaluated Schroll and scored him as follows:  immediate memory at ninth grade, seven months; rate and accuracy at first grade, four months; fluency at first grade, seventh month; illusions at second grade; blending words at second grade, four months; nonword repetition at first grade, four months; visual motor integration at eleventh grade, two months; visual perception at tenth grade, three months; and visual/aural digit span at nine years to nine years, five months.  (#11-8, pp. 29, 36-46.)  The DIA recommended that Shawn participate in its tutoring program once per week for two hours for two and one-half to three and one-half years in addition to a home therapy program.  (#11-6, pp. 60-62.)

In March 2006, Schroll transferred to Centennial High School where he continued receiving special education services.  (#11-11, pp. 78-79; #11-12, p. 139.)  Also in March 2006,

Schroll's parents requested a due process hearing to determine whether the District should cover the costs of DIA tutoring.  (#11-4, pp. 155-56.)  In July 2006, after a two-day due process hearing, Hearing Officer Robert Ladenson issued a Decision and Order denying Schroll's request that the District pay for the costs of private tutoring.  (#25-2, p. 10.)

### B.  The Hearing Officer's Decision

The IDEA requires school districts to provide children with disabilities with a free appropriate public education (hereinafter "FAPE") by (1) following the procedures set forth in the IDEA, and (2) developing an IEP "reasonably calculated to enable the child to receive educational benefits."  *Bd. of Educ. of the Hendrik Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982); *Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist.*, 375 F.3d 603, 613 (7th Cir. 2004).

The Hearing Officer found that children with disabilities similar to Schroll's have immense difficulty in learning to read.  (Opinion and Ruling, #11-2, pp. 6-7.)  Based on this finding, the Hearing Officer determined that an educational program for Schroll would be reasonably calculated to provide him educational benefits if "(a) it results from thorough identification and careful analysis of educationally relevant considerations in regard to the Student, and (b) the principal provisions of the program are implemented conscientiously by School District Staff."  (#11-2, p. 7.)

The Hearing Officer found that the District had provided Schroll with an educational program reasonably calculated to confer educational benefits because the District developed IEPs for Schroll based on thorough identification and careful analysis of educationally relevant considerations.  *Id.*  The District has determined an appropriate class for Schroll at an appropriate level of instruction and used educational approaches designed to tap Schroll's areas of interest and motivate him to put forth educational effort.  *Id.*  In addition, the District has reviewed the DIA program and concluded that it is not likely to result in significantly greater educational benefit for Schroll than his IEP.  *Id.*

The Hearing Officer also found that the District implemented Schroll's IEPs conscientiously. *Id*. Schroll's IEP called for supplementary aids such as reading test items out loud, having an adult write down Schroll's answers on written exams, and providing extended test time. *Id.* at 4. While the District has not followed through sufficiently to assure that these particular accommodations have been implemented consistently, none of them relate to matters that affected Schroll's progress in reading. *Id.* Instead, these accommodations related solely to Schroll's ability to achieve passing grades, which he has succeeded in doing. *Id.*

## II. Standard of Review

The standard for reviewing a hearing officer's decision in an IDEA case differs from the standard of review for other summary judgment motions. In reviewing these motions for summary judgment, the Court bases its decision on a preponderance of the evidence and gives "due weight" to the hearing officer's findings, a standard that is more stringent than the substantial evidence standard but less stringent than *de novo* review. 20 U.S.C. § 1415(i)(2)(B)(iii); *Heather S. v. Wis.*, 125 F.3d 1045, 1052 (7th Cir. 1997). The Seventh Circuit describes the standard of review in IDEA cases as a sliding scale, with a more searching review necessary the greater the amount of new evidence submitted to the court. *Sch. Dist. of Wis. Dells v. Littlegeorge*, 295 F.3d 671, 675 (7th Cir. 2002). When no new evidence is submitted, the Court will give considerable deference to the hearing officer's findings. *Id.* (noting that this is basically the clear-error or substantial-evidence standard).

## III. Analysis

Plaintiffs argue that they are entitled to summary judgment because the District denied Schroll a FAPE as required under the IDEA. Plaintiffs provide five reasons why the hearing officer's decision was erroneous: (1) the IEP did not confer a meaningful educational benefit on the student, (2) Schroll's difficulties do not excuse the District from making reasonable efforts to provide a FAPE, (3) the District did not conscientiously implement the IEP, (4) the IEP was not designed to confer any educational benefit, and (5) the District failed to provide Schroll with an AT device as required. Each argument will be discussed in the aforementioned order.

### A.  The IEP as Written

Plaintiffs first argue that the Court should grant summary judgment in their favor because the IEP did not confer a meaningful educational benefit on the student and Schroll never achieved any IEP goal.

School districts must develop an IEP that is "reasonably calculated to enable the child to receive educational benefits." *Rowley*, 458 U.S. at 206-207.  In addition, the IEP must be "likely to produce progress, not regression or trivial educational advancement." *Alex R.*, 375 F.3d at 615 (citations omitted).  The "requisite degree of reasonable, likely progress varies, depending on the student's abilities[, and] . . . [o]bjective factors, such as regular advancement from grade to grade, and achievement of passing grades, usually show satisfactory progress." *Id.* at 615.  Additionally, "[a]ny lack of progress under a particular IEP . . . does not render the IEP inappropriate." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 530 (3rd Cir. 1995).  Instead, the IDEA guarantees students with disabilities a "basic floor of opportunity" consisting of "access to specialized instruction and related services." *Rowley*, 458 U.S. at 201.

In this case, Schroll has successfully advanced from grade to grade, achieved passing grades, and is on track to graduate in four years.  These objective factors are evidence that Schroll has achieved satisfactory progress.  In addition, as noted above, simply because Schroll never achieved an IEP goal does not make the IEP inappropriate and does not constitute a denial of a FAPE. *Carlisle*, 62 F.3d at 530.  Likewise, it is irrelevant whether Schroll's IEP conferred a meaningful educational benefit on him as long as the IEP was reasonably calculated to do so.  Here, Schroll's IEP was individually designed for him and consisted of specialized classroom accommodations including orally administered exams, extended time for exams, use of a calculator or other calculation device, retests for unsatisfactory scores, and extra credit opportunities.  (#11-4, pp. 166-73.)  Therefore, the Court concludes that the IEP was reasonably calculated to enable Schroll to receive educational benefits and, thus, was appropriate.

### B. Reasonable Efforts To Provide a FAPE

Plaintiffs next argue that the challenges and difficulties Schroll faces as a student with a disability do not excuse the District from making reasonable efforts to provide him with a FAPE.

Neither the District nor the Hearing Officer contend that Schroll's disability absolves the District from providing Schroll with a FAPE. On the contrary, each contend that Schroll was provided with a FAPE because the District developed an IEP based on "a thorough identification and careful analysis of educationally relevant considerations." (#11-2, p.7.) Therefore, the Court finds this argument to be without merit.

### C. The Implementation of the IEP

Plaintiffs also argue that the District did not conscientiously implement Schroll's IEP because his teacher, Ms. Lavin, never saw the IEP and did not individualize her classroom efforts to meet Schroll's needs.

It is undisputed that Ms. Lavin never saw Schroll's IEP. However, it is also undisputed that Ms. Lavin was familiar with Schroll's IEP, worked on Schroll's IEP goals and objectives during class, and attended some of Schroll's IEP meetings. (#11-8, p. 101; #11-9, pp. 174-75.) Thus, the fact that Ms. Lavin never saw Schroll's IEP is irrelevant because nothing in the statute suggests that a student's teachers must see the physical IEP, only that the teachers must implement IEP goals. Here, Ms. Lavin implemented those goals in her classroom instruction through the use of phonics books and other reading tools. (#11-9, pp. 171-75.)

In addition, neither the IDEA nor Schroll's IEP require individualized instruction. Instead, the IDEA requires that the IEP team create individualized goals and that the teachers work toward completing those goals. 20 U.S.C. § 1414(d). Furthermore, the Court finds it notable that the District in fact offered Schroll one-on-one tutoring and assistance and that Schroll's parents declined this offer. (#11-11, p. 58; #11-13, pp. 306-07.) In this case, the IEP team created individualized goals based on an assessment of Schroll's abilities and those goals were implemented in class via group instruction. Therefore, the lack of individualized instruction

and the fact that Ms. Lavin never saw the IEP have no bearing on whether or not the District implemented the IEP because Schroll's IEP was implemented in class through classroom instruction.

### D.  The IEP Updates

Schroll further argues that the IEP was not appropriate because it was photocopied from year to year with no achievement of any IEP goals and no revision of those goals.

The IDEA states that an IEP must be "updated annually."  20 U.S.C. § 1414(d)(1)(A)(i)(VIII).  However, the statute also indicates that the IEP should be revised only "as appropriate."  20 U.S.C. § 1414(d)(4)(ii).  Because the latter portion of the statute is the more specific provision regarding IEP revisions, its language controls.  *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1981).  Thus, while the IEP must be reviewed annually, it only needs to be revised when appropriate.

An IEP is not inappropriate simply because it does not change significantly on an annual basis.  *Carlisle Area Sch.*, 62 F.3d at 533-34.  Nor is an IEP inappropriate because the student does not meet any of the IEP goals.  *Id.* at 530.  Again, the appropriateness of an IEP is determined by whether or not it is "sufficient to confer some educational benefit."  *Rowley*, 458 U.S. at 200.

The Court notes that if the student made no progress under a particular IEP in a particular year, that the propriety of an identical IEP in the next year may be questionable.  However, Schroll does not dispute that the IEP team, which includes his parents, regularly reviewed his IEP.  (#11-9, pp. 174-75; #11-11, pp. 9-12, 22-26.)  In addition, Schroll has not referred to any particular provisions of the IEP that he contends are inappropriate.  The District admits that Schroll's progress towards his IEP goals has been slow, but Schroll does not dispute that this level of progress is consistent with his disability.  (#11-9, pp. 226-27, 241-44.)  Therefore, Plaintiffs have not established by a preponderance of the evidence that his IEP was insufficient to confer some educational benefit.

### E. Procedural Violations

Last, Plaintiffs argue that the District deprived him of a FAPE because it violated the IDEA's procedural requirements by failing to provide Schroll with an AT device, to implement the daily assignment notebook, and to notify Schroll's parents of his progress weekly.

The IDEA requires certain procedures that are listed in 20 U.S.C. § 1415(b). Nowhere in this list of required procedures are any of the violations Plaintiffs complain of. Furthermore, even if the Court were to find that the District's conduct constituted procedural violations, the IDEA notes that:

> In matters alleging a procedural violation, a hearing officer may find that a child did not receive a [FAPE] only if the procedural inadequacies– (I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E). In addition, the Seventh Circuit has held that a procedural violation clearly constitutes the denial of a FAPE if it results in the loss of educational opportunities. *Evanston Cmty. Consol. Sch. Dist. No. 65 v. Michael M.*, 356 F.3d 798, 804 (7th Cir. 2004).

The Hearing Officer found that none of the alleged violations deprived Schroll of a FAPE. Specifically, the Hearing Officer determined that "[n]one of the accommodations . . . relate to matters that affect the Student's progress in reading, which . . . is the concern that the remedy requested by the Parents seeks to address." (#11-2, p. 7.) In addition, the language of the statute is permissive rather than compulsory and indicates that the Hearing Officer *may* find that a procedural violation amounts to a denial of a FAPE. Therefore, in light of the considerable deference afforded to a Hearing Officer's findings of fact in an IDEA case, the Court finds that Plaintiffs have failed to establish by a preponderance of the evidence that the Hearing Officer's decision should be overturned.

The record shows that the District did not provide the AT device to Schroll because Schroll failed to show up at his meeting with the District's assistive technology coordinator. (#11-11, pp. 45-46.) Under those circumstances, it is difficult to criticize the District for failing

to provide Schroll with the device. Thus, the Court will not grant Plaintiffs' motion for summary judgment based on the purported procedural violations.

## IV. Summary

For the reasons set forth above, this Court **DENIES** Plaintiff Schroll's Motion for Summary Judgment **(#21)**.

ENTER this 10th day of August, 2007.

                                                  s/ DAVID G. BERNTHAL
                                                  U.S. MAGISTRATE JUDGE